Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES IN PART and AFFIRMS IN PART the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in an executed Pre-Trial Agreement, as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times herein.
3. Defendant was a duly qualified self-insured at all relevant times herein with Crawford Company as its servicing agent.
4. Plaintiff suffered a low back strain at work on or about June 10, 1994 in Hoke County, North Carolina.
5. There was no Industrial Commission Form 21 entered as plaintiff's injury was treated as a medical only claim by defendant.
6. An Industrial Commission Form 22 showed plaintiff's average weekly wage was $350.63, yielding a compensation rate of $233.77.
7. The parties stipulated to plaintiff's medical records from Drs. R. G. Townsend; Cecil H. Neville, Jr.; Mark E. Brenner; Ralph E. Carter III; and Glen R. Harris; Burlington Industries Medical Department; Maxton Medical Services; and Scotland Memorial Hospital; and the physical therapy records of Pinehurst Rehabilitation Center, Inc.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 39 year old male with an eighth grade education. Plaintiff was employed by defendant on March 14, 1994, after having worked for a period as a temporary worker. In 1994, plaintiff was 5'11" tall and weighed 260 pounds. At the time of the hearing, plaintiff was 5'11" tall and weighed 280 pounds.
2. On June 10, 1994, plaintiff was performing his job as a "filler hauler" for defendant, when he sustained an injury by accident to his lower back as he was pulling lids of boxes containing empty yarns. The claim was treated by defendant as a "medical only" claim since following plaintiff's injury, he did not miss any time from work. He returned to light duty work immediately and returned to full duty work by mid August of 1994.
3. Following his injury of June 10, 1994, plaintiff received medical treatment June 10 and 11, 1994, from Dr. R. G. Townsend who initially diagnosed him with muscle spasms. As of June 15, 1994, Dr. Townsend indicated that plaintiff could return to light-duty work with no prolonged standing, bending or stooping for one week.
4. Plaintiff was treated by Maxton Medical Services prior to and following his injury of June 10, 1994. Prior to June 10, 1994, plaintiff had been diagnosed with hypertension or high blood pressure.
5. Plaintiff was treated at Maxton Medical Services on June 14, 1994, due to a second degree chemical burn of about 3x4 inches over the right paravertebrals, starting at the midline and extending out at L4 and L5 which apparently had resulted from some type of material which had been sprayed on his back June 10, 1994 when plaintiff was treated for his back injury by a physician's assistant in Dr. Townsend's office.
6. As of June 30, 1994, a form was completed indicating that plaintiff could return to regular-duty work, and that plaintiff had no other medical problems with the exception of hypocholesterolemia. Plaintiff was again seen at Maxton Medical Services July 1, 1994, for a blood sugar check. There was no indication of any other medical problem at that time.
7. On June 17, 1994, plaintiff saw Dr. Cecil Neville who diagnosed him with acute back strain, a chemical burn to the skin, and degenerative changes at L3-4 and L4-5 on the anterior margin of the vertebrae, noting that the degenerative changes were compatible with obesity. On June 30, 1994, Dr. Neville noted that plaintiff was dramatically better than he was on June 17, 1994 and the burn had healed. Dr. Neville found negative straight leg raising pain and only minimal back pain. The neurological exam was normal. On July 28, 1994, Dr. Neville noted that plaintiff had only occasional pain in his back and had good flexion without muscle spasm, but still had limitations as far as his lumbar flexion. Dr. Neville noted that plaintiff appeared to have made a good recovery and talked to plaintiff about returning to regular work four hours per day and doing light work for four hours per day for two weeks and then resuming his full activities. Dr. Neville felt plaintiff did not have any residual difficulties as a result of his back pain and as of August 1, 1994, Dr. Neville felt plaintiff warranted a 0% disability rating for his back.
8. Plaintiff presented to Dr. Mark Brenner, an orthopaedic surgeon, on December 15, 1994, upon the referral of his attorney. Dr. Brenner found that plaintiff had a limited range of motion and tenderness at L4-5 and L5-S1. Straight leg raising was negative and motor and sensory examinations were normal. Dr. Brenner ordered an MRI scan and bone scan. The bone scan was unremarkable and the MRI showed degenerative disc disease and a pathology consistent with a chronic degenerative arthritis of the low back. Dr. Brenner noted plaintiff's MRI was consistent with the x-rays from Dr. Neville, noting degenerative changes at L3-4 and L4-5.
9. As of December 29, 1994, Dr. Brenner noted that plaintiff reported to him that he was out of work for medical leave secondary to increased hypertension. Plaintiff never indicated to Dr. Brenner that he was out of work because of his back. Dr. Brenner testified that he filled out disability forms for plaintiff because of plaintiff's hypertension, weight problem and a variety of other problems, not because of any condition relating to his workers' compensation claim. Dr. Brenner noted that when he saw plaintiff February 9, 1995, plaintiff was still out of work, but was much better; although plaintiff was having dizzy spells secondary to high blood pressure.
10. Dr. Brenner released plaintiff with respect to his workers' compensation claim March 1, 1995, but plaintiff still had some other ongoing health problems. Dr. Brenner also noted that as of October 10, 1995, plaintiff was having some swelling in both legs and was not doing well regarding his low back. Dr. Brenner was of the opinion that symptoms of swelling in both legs would be evidence of cardiac fluid retention secondary to heart failure, lung problems, retaining fluids because of lung problems, liver problems and retaining fluid on the basis of liver disease or kidney disease. Dr. Brenner further testified that while he treated plaintiff, there were times when plaintiff got better and times when he got worse, exactly as one would expect from degenerative disc disease and that plaintiff's symptoms of back pain in December of 1995, were not necessarily related to his injury of June 10, 1994.
11. Dr. Brenner opined that plaintiff reached maximum medical improvement eight weeks after his injury on June 10, 1994; that his workplace injury did not cause his long-term disability and that plaintiff's injury warranted a 5% permanent partial disability rating. Greater weight is given to the impairment rating of Dr. Brenner over that of Dr. Neville.
12. Plaintiff also presented to Dr. Ralph E. Carter III, an orthopaedic surgeon, who evaluated him on November 13, 1996. Dr. Carter testified that he only saw plaintiff on that one occasion and the only information he had with respect to plaintiff was what plaintiff reported to him, a letter from plaintiff's attorney and some handwritten notes from Dr. Brenner. Dr. Carter was not aware that Dr. Neville had treated plaintiff. Dr. Carter testified that Drs. Neville and Brenner would certainly be in a better position than he to render opinions concerning plaintiff and the relationship of plaintiff's problems to his injury of June 10, 1994.
13. With respect to plaintiff's disability beginning September 12, 1994 and ending October 17, 1994, plaintiff reported to defendant's medical department nurse on September 12, 1994 complaining that he had been bothered by chest pain and dizziness on three different occasions which nearly caused him to pass out at work. Defendant's nursing notes are consistent with the disability claim forms beginning September 12, 1994, showing plaintiff was out of work for hypertension.
14. Plaintiff has also been treated by several other physicians, including Scotland Memorial Hospital and Dr. Harris. The records from Scotland Memorial Hospital show plaintiff had been diagnosed with severe sleep apnea. The records from Dr. Harris dated April 28, 1997 show plaintiff suffered from diabetes and poorly controlled hypertension. Dr. Harris treated plaintiff from April 28, 1997 through October 28, 1997 and the only reference to back pain was on October 28, 1997, when Dr. Harris recorded "occasional back pain."
15. The competent evidence in the record fails to establish that plaintiff suffered any temporary total disability following his low back injury of June 10, 1994. Plaintiff's disability after December 29, 1994 was not related to his injury of June 10, 1994.
16. The medical opinions provided by Drs. Neville and Brenner concerning the causal relationship between plaintiff's current condition and his June 10, 1994 injury and the extent of plaintiff's disability are accorded greater weight than any contrary opinions by other doctors.
17. Plaintiff received short-term disability payments under a policy for which he paid a portion of the premiums.
18. Plaintiff's need for medical treatment related to his admittedly compensable injury by accident of June 10, 1994 ended by March 1, 1995.
***********
Based on the foregoing findings of fact and stipulations, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of the course of his employment and as a direct result of a specific traumatic incident of the work assigned by defendant on June 10, 1994. N.C. Gen. Stat. § 97-2(6).
2. The Workers' Compensation Act permits an employer to pay bills for medical and other treatment of an employee, and the payment of such bills, approved by the Commission, even without formal denial of liability, cannot have the effect of an admission of liability by the employer or constitute a waiver of the requirement of filing a timely claim by the employee as provided in N.C. Gen. Stat. § 97-24. Biddix v. Rex Mills,Inc., 237 N.C. 660, 75 S.E.2d 777 (1953).
3. This is not a "change of condition" case. No claim by plaintiff for disability compensation was filed until January 23, 1995 and the claim alleged disability beginning June 10, 1994. However, plaintiff was not disabled from any cause during June, July, and August, 1994. No previous award of disability compensation has been rendered by the Industrial Commission in this case. No I.C. Form 21 has ever been filed in this case and no presumption of disability has arisen in plaintiff's favor. Plaintiff has failed to carry his burden to prove that his alleged total disability after December 29, 1994 is a result of the low back injury sustained on June 10, 1994. Rather, according to the convincing, credible medical and other evidence, plaintiff's disabling symptoms developed after plaintiff's back pain ended from his June 10, 1994 back injury and came about independently from that incident. In addition, any additional disability suffered by plaintiff after December 29, 1994, was due to plaintiff's other medical conditions aside from any alleged back problems.
4. Plaintiff's need for medical treatment related to his injury of June 10, 1994 ended by March 1, 1995, and, therefore, plaintiff is entitled to no further medical benefits. N.C. Gen. Stat. § 97-25.
5. As a result of his injury by accident of June 10, 1994, plaintiff retains a 5% permanent partial disability of the back entitling him to 15 weeks of compensation at a rate of $233.77 per week. N.C. Gen. Stat. § 97-31(23).
6. Defendant-employer is not entitled to a credit for short term disability payments received by plaintiff as plaintiff paid part of the premiums and plaintiff has not been awarded any wage loss compensation for temporary total disability herein due to his compensable injury.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for temporary total disability benefits must be and is hereby DENIED.
2. Defendants shall pay plaintiff 15 weeks of compensation at a rate of $233.78 per week. Such compensation shall be paid in a lump sum, subject to a reasonable attorney's fee hereinafter approved.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation benefits due plaintiff under Paragraph 2 of this Award is approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly to plaintiff's counsel.
4. Defendants shall pay all medical expenses incurred by plaintiff for his back injury through March 1, 1995 when bills for same have been submitted and approved through procedures adopted by the Commission.
5. Defendant shall bear the costs.
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, Jr. CHAIRMAN
S/_____________ THOMAS J. BOLCH COMMISSIONER